## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF MISSISSIPPI
## JACKSON DIVISION

**KUSHAUNTIA L. JONES**                                                                 **PLAINTIFF**

**V.**                                                          **CIVIL ACTION NO. 3:07cv72 DPJ-JCS**

**JACKSON STATE UNIVERSITY**
**and ANTHONY DEAN, individually**                                              **DEFENDANTS**

MEMORANDUM OPINION AND ORDER

This employment discrimination case is before the Court on motions for summary judgment filed by Defendants Jackson State University ("JSU") and Anthony Dean ("Dean"). Plaintiff Kushauntia L. Jones ("Jones") has responded, conceding her negligence claims and contesting the rest. The Court, having considered the memoranda and submissions of the parties and the applicable law, concludes that Defendant Dean's motion [48] should be granted in part and denied in part and that Defendant JSU's motion [47] should be granted in part, denied in part, and taken under advisement in part.

**I.      Facts and Procedural History**

Plaintiff began her employment at JSU in October 2001. From January to August 2005, Jones served as an Administrative Assistant under the supervision of Defendant Dean. Plaintiff claims that Dean began sexually harassing her in September 2005. According to Plaintiff, the conduct began with inappropriate remarks, but Dean apologized and promised that the conduct would stop. The conduct allegedly continued and intensified in the following months to include requests for sexual favors, inappropriate gestures, crude comments, and grabbing of Jones's underwear. In November and December, Dean allegedly began exposing himself to Jones, and

she further claims that on one such occasion he "forced the back of her head down . . . with his hand."  Dean denies all of this.

Plaintiff formally complained about Dean's alleged conduct to the University's Chief of Staff and Director of Human Resources on January 11-13, 2006.  JSU immediately investigated.  However, the results were inconclusive, and a hearing before a grievance panel followed.  That panel ultimately concluded that neither side presented "concrete evidence" as to whether Dean sexually harassed Plaintiff.  Nevertheless, the panel did determine that Dean had been inappropriately flirtatious, that the school should reprimand him for his conduct, and, if possible, the school should transfer Jones from his supervision.  JSU declined the recommendation to reprimand Dean and initially left Plaintiff under his supervision, though she was moved within the office and given different responsibilities.  Plaintiff thereafter requested a transfer, but it did not immediately occur.  Approximately one year later, at Dean's request, the school transferred Plaintiff to another department.  Dean testified that he requested the move because, among other things, "she had alleged retaliation" after her grievance was denied.

Having exhausted her administrative remedies by filing a charge of discrimination with the Equal Employment Opportunity Commission, Jones filed the present suit against JSU and Dean alleging sexual harassment, retaliation, "outrage," intentional and/or negligent infliction of emotional distress, negligent supervision, tortuous interference with business and/or contractual relations, and punitive damages.  Defendants have moved for judgment as a matter of law as to all claims.

**II.     Analysis**

Summary judgment is warranted under Rule 56(c) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law.  The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact.  *Id.* at 323.  The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial."  *Id*. at 324.  Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial.  *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1997); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  Instead, when the movant shows the absence of a genuine issue of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial."  *Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995). A simple plea for a jury trial on the bare assertion that there are genuine issues of material fact is not a sufficient response to a motion for summary judgment.  *F.D.I.C. v. Brewer*, 823 F. Supp. 1341, 1347 (S.D. Miss. 1993) (citing *Washington v. Armstrong World Indus., Inc.*, 839 F.3d 1121, 1122–23 (5th Cir. 1988)).

In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075.  When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence."  *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 150 (2000).

"In an employment discrimination case, the Court should focus on whether a genuine issue exists regarding whether the defendant intentionally discriminated against the plaintiff. Unsubstantiated assertions are not competent summary judgment evidence.  Nor are conjecture or speculation adequate to satisfy the nonmovant's burden."  *Parker v. Tyson Foods, Inc.*, No. 5:05-cv-209, 2007 WL 2021928, at *1 (S.D. Miss. July 9, 2007) (internal citations omitted). Furthermore,

> [t]he Fifth Circuit has held that an employee's self-serving generalized testimony stating his subjective belief that discrimination occurred is simply insufficient to support a jury verdict in plaintiff's favor. [Thus], the Fifth Circuit has held that summary judgment may be appropriate in cases where elusive concepts such as motive or intent are at issue, if the nonmoving party rests merely upon conclusory allegations, improbable inferences and unsupported speculation.

*Id.* (internal citations and quotations omitted).

A.   Sexual Harassment

Plaintiff's Amended Complaint alleges that JSU and Dean are liable under Title VII of the Civil Rights Act of 1964 for Dean's alleged sexual harassment.  Title VII prohibits discrimination in employment decisions on the basis of "race, color, religion, sex or national origin."  42 U.S.C. § 2000e-2(a)(1) (2003).  Plaintiff further contends that Dean is liable under 42 U.S.C. § 1983.

1.     *Sexual Harassment Claim Against Defendant JSU*

Although JSU contests the facts, its motion correctly accepts that the facts, when viewed in the light most favorable to Plaintiff, would state a prima facie case of sexual harassment under Title VII.  Defendant therefore moves for summary judgment pursuant to the affirmative defense recognized in *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998) and *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998).

In cases involving harassment by a supervisor where no tangible employment action is taken, *Ellerth* and *Faragher* establish an affirmative defense to vicarious liability under Title VII; "[t]he defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Ellerth*, 524 U.S. at 765.

JSU adopted a policy against sexual harassment and a comprehensive grievance procedure, both of which were known to Plaintiff.  The issues, therefore, are whether JSU "exercised reasonable care" to prevent and promptly correct the alleged harassment and whether Jones availed herself of the University's procedures to avoid harm.  *Id.*

The Court finds that JSU has not established at least the second prong of the test–that Plaintiff failed to avail herself of the procedures.  Defendant argues that Plaintiff's four-month delay in filing a formal grievance demonstrates that she "unreasonably failed to take advantage of any preventive or corrective opportunities." *Id*.  Assuming that the alleged conduct was sufficiently severe and pervasive to constitute sexual harassment in September 2005, Plaintiff attempted to first address the matter directly with Dean, who allegedly apologized and assured

her that the conduct would cease. The more serious allegations occurred in November and December 2005, when Dean allegedly exposed himself. The final straw, according to Plaintiff, was another instance of verbal harassment that occurred the same day she made her complaint in January 2006.

The issue in this case is similar to the one addressed in *Watts v. Kroger Co.*, 170 F.3d 505 (5th Cir. 1999). There, the plaintiff alleged sexual harassment that began in 1993, but intensified in the Spring of 1994. *Id.* at 507. The plaintiff finally complained in July 1994. *Id.* at 508. Finding that the delay was too long, the trial court dismissed the sexual harassment claim. *Id.* at 510. The Fifth Circuit Court of Appeals reversed, explaining:

> Watts alleges that her supervisor's harassment intensified in the spring of 1994. A jury could find that waiting until July of that same year before complaining is not unreasonable. *Cf. Fall v. Indiana Univ. Bd. of Trustees*, 12 F. Supp. 2d 870, 884 (N.D. Ind. July 23, 1998) ("In other words, the [c]ourt cannot say as a matter of law that a sexual assault victim who waits three months to report the incident, under these circumstances, unreasonably failed to take advantage of the [defendant's] anti-harassment procedures.").

*Id.* at 510-11. So too, this Court cannot say as a matter of law that Plaintiff's delay was unreasonable. Defendant's motion for summary judgment is therefore denied as to this claim.

    2.    *Sexual Harassment Claim Against Defendant Dean*

Plaintiff's Title VII sexual harassment claim against Dean must fail because "[i]ndividuals are not liable under Title VII in either their individual or official capacities." *Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 382 n.1 (5th Cir. 2003) (citing *Smith v. Amedisys Inc.*, 298 F.3d 434, 448-49 (5th Cir. 2002)). Similarly, Plaintiff's claim under 42 U.S.C. § 1981, to the extent one can be read in the Amended Complaint, also fails because §1981 addresses race-based discrimination, and Plaintiff makes no such allegation. Plaintiff offers no real

opposition to these portions of Dean's motion, which are due to be granted, but insists that her claim for sexual harassment survives under 42 U.S.C. § 1983.

"Section 1983 affords redress against a person who under color of state law deprives another person of any federal constitutional or statutory right." *San Jacinto Sav. & Loan v. Kacal*, 928 F.2d 697, 700 (5th Cir. 1991) (citing *Thibodeaux v. Bordelon*, 740 F.2d 329 (5th Cir. 1984); *Phillips v. Vandygriff*, 711 F.2d 1217, 1221 (5th Cir. 1983), *cert. denied*, 469 U.S. 821 (1984)). Defendant offers the following two arguments to defeat Plaintiff's §1983 claim: (1) Plaintiff failed to identify a policy or custom that caused her alleged injury, and (2) the record evidence does not support the alleged acts of sexual harassment.

Dean cites *Bennett v. City of Slidell* for the proposition that Plaintiff must establish a policy or custom. 728 F.2d 762, 767 (5th Cir. 1984), *cert. denied*, 472 U.S. 1016 (1985). *Bennett* holds that "*a city* may be liable only where the injury is inflicted in the execution of city policy." *Id*. (emphasis added). That holding derives from the fact that §1983 creates no governmental respondeat superior liability. *Id*. at 765-66 (citing *Monroe v. Pape*, 365 U.S. 167 (1961)). A plaintiff may, however, succeed under §1983 by showing that an individual acting under color of state law was "personally involved in" the alleged constitutional or statutory deprivation. *Kohler v. Englade*, 470 F.3d 1104, 1115 (5th Cir. 2006); *Woods v. Edwards*, 51 F.3d 577, 583 (5th Cir. 1995). Plaintiff has taken this approach.

Finally, the Court must reject the argument that Plaintiff's record evidence is insufficient to create a material question of fact as to whether Dean sexually harassed her. When parties present contradictory facts, the Court may "not make credibility determinations or weigh the

evidence." *Reeves*, 530 U.S. at 150. Defendant Dean offers no other argument to defeat Plaintiff's §1983 claim, and the Court therefore holds that this claim survives.

  B. <u>State Tort Claims Against Dean</u>

Plaintiff's Amended Complaint includes claims of intentional infliction of emotional distress, outrage, and tortious interference with a contract against Defendant Dean. Dean submits that all state tort claims against him are barred by the exclusive remedies provisions of Mississippi Tort's Claims Act (MTCA). Miss. Code Ann. § 11-46-7(1) (Rev. 2002). That section states:

> The remedy provided by this chapter against a governmental entity or its employee *is exclusive of any other civil action or civil proceeding* by reason of the same subject matter against the governmental entity or its employee or the estate of the employee for the act or omission which gave rise to the claim or suit; and any claim made or suit filed against a governmental entity or its employee to recover damages for any injury for which immunity has been waived under this chapter *shall be brought only under the provisions of this chapter, notwithstanding the provisions of any other law to the contrary*.

*Id*. (emphasis added).

Interpreting this provision, the Mississippi Supreme Court has held, "The MTCA provides the exclusive civil remedy against a governmental entity and its employees for acts or omissions which give rise to a suit." *City of Jackson v. Sutton*, 797 So. 2d 977, 981 (Miss. 2001) (citations omitted) ("The case law is clear that the Mississippi Tort Claims Act is the only route by which the plaintiffs could file suit against" a governmental employee); *see also Univ. of S. Miss. v. Williams*, 891 So. 2d 160 (Miss. 2004) (same). There is no suggestion in the record that Plaintiff pursued her claims under the MTCA.

Plaintiff's initial response to Dean's motion for summary judgment did not address the MTCA argument. The Court therefore invited Plaintiff to file a supplemental response, which

she did, but her response still failed to address Dean's exclusivity argument. Plaintiff has not offered the Court any argument or evidence suggesting that her claims survive the exclusivity bar of the MTCA, and the Court therefore grants Defendant Dean's motion with respect to Plaintiff's tort claims. *Id.*, *see also* FED. R. CIV. P. 56(e).

      C.      <u>Intentional Infliction of Emotional Distress/Outrage Claim Against JSU</u>

Plaintiff seeks damages from Defendant JSU for intentional infliction of emotional distress, "the Mississippi equivalent of the 'tort of outrage.'" *Bombarbier Capital, Inc. v. Royer Homes of Miss., Inc.*, No. 1:04cv884, 2006 WL 1328907 (S.D. Miss. May 15, 2006). "The standard for intentional infliction of emotional distress in Mississippi is very high: [a] defendant's conduct must be wanton and wilful and [such that] it would evoke outrage or revulsion." *Hatley v. Hilton Hotels Corp.*, 308 F.3d 473, 476 (5th Cir. 2002) (internal quotations and citation omitted). As explained by the Mississippi Supreme Court, conduct constituting intentional infliction of emotional distress must be "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Speed v. Scott*, 787 So. 2d 626, 630 (Miss. 2001) (quoting *Pegues v. Emerson Elec. Co.*, 913 F. Supp. 976, 982 (N.D. Miss. 1996)). "[L]iability does not extend to mere insults, indignities, threats, annoyances, petty oppression, or other trivialities." *Raiola v. Chevron U.S.A., Inc.*, 872 So. 2d 79, 85 (Miss. Ct. App. 2004) (citation omitted).

In analyzing an intentional infliction of emotional distress claim, it is also important to note that the conduct itself must be extreme and outrageous.

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort.

*Dandridge v. Chromcraft Corp.*, 914 F. Supp. 1396, 1405 (N.D. Miss. 1996) (quoting *Burroughs v. FFP Operating Partners, L.P.*, 28 F.3d 543, 546 (5th Cir. 1994)).

Finally, damages for intentional infliction of emotional distress are usually not recoverable in mere employment disputes. "Only in the most unusual cases does the conduct move out of the realm of an ordinary employment dispute into the classification of extreme and outrageous, as required for the tort of intentional infliction of emotional distress." *Prunty v. Ark. Freightways, Inc.*, 16 F.3d 649, 654 (5th Cir. 1994) (citation and internal quotation omitted) (quoted in *Raiola*, 872 So. 2d at 85). "In general, causes of action for intentional infliction of emotional distress within the context of a workplace environment are limited to cases involving a pattern of deliberate, repeated harassment over a period of time." *Means v. B & G Enters., Inc.*, No. 1:04cv776, 2006 WL 2632568, at *11 (S.D. Miss. Sept. 13, 2006) (internal quotations and citation omitted).

Some of the acts Plaintiff alleges against JSU are either unsupported in the record or mischaracterize the nature of Defendant's conduct. Those issues cannot rebut a properly supported motion for summary judgment. Substantively, Plaintiff takes issue with the way Defendant conducted its investigation, its findings, and its follow-up measures, but these acts all fall within the realm of employment decisions. Moreover, there is a distinction between the employer's liability for sexual harassment under Title VII and intentional infliction of emotional distress. *See Hatley*, 308 F.3d at 476 (affirming dismissal of intentional infliction of emotional

distress claim while reversing judgment as to sexual harassment claim); *see also Knight v. Miss. Dep't of Pub. Safety*, No. 3:06cv139, 2007 WL 2219327, at *8 (S.D. Miss. July 27, 2007) (denying motion for summary judgment on sexual harassment claim but granting motion as to intentional infliction of emotional distress).

Finally, Plaintiff makes a ratification argument. Again, the *Hatley* opinion is helpful. The plaintiffs in that case also claimed ratification due to defendant's "sham" investigation of their complaints. 308 F.3d at 474-45. In rejecting an *Ellerth* defense, the Fifth Circuit noted that the evidence "supported the jury's finding that the investigation was inadequate and that [the employer] did not take reasonable measures to correct or prevent the harassment." *Id.* at 476. Nevertheless, the court found that the facts did not support ratification. *Id.*; *see also Little v. K & B Miss. Corp.*, No. 3:06-cv-501, 2007 WL 2417353, at *7 (S.D. Miss. Aug. 27, 2007). *But see Prunty*, 16 F.3d 655 (finding ratification under Texas law where employer was aware of "extreme and outrageous" conduct yet did nothing for extended period of time).

Plaintiff attempts to distinguish *Hatley* by stating that the "key difference . . . is that the complaints made by the plaintiffs in *Hatley* had 'fallen through the cracks,'" whereas JSU has not argued that it was negligent. Plaintiff's Response at 22. What *Hatley* actually says is that "*previous* sexual harassment complaints had 'fallen through the cracks.'" 308 F.3d at 475-76 (emphasis added). It is not apparent that the "previous" complaints were even made by the *Hatley* plaintiffs, but it is clear that they were not the same complaints about which suit was brought. *Id.* Like JSU, the defendant in *Hatley* believed its investigation of the subject claims was thorough. *Id.* at 475.

11

Plaintiff also attempts to distinguish *Hatley* because the employer "found the allegation to be without merit," whereas in this case, JSU "found that Plaintiff had been sexually harassed, [yet] it did nothing to prevent further harassment." Plaintiff's Response at 22. Plaintiff's argument mischaracterizes the record. JSU found inappropriate flirtation, but that is not the same as finding sexual harassment which must be sufficiently severe and pervasive. More precisely, JSU could not determine whether or not Dean sexually harassed Jones in this "he said, she said" case. Plaintiff has presented no authority for finding ratification on these facts, and the Court finds that JSU's motion should be granted.

     D.     <u>Punitive Damages</u>

Defendant JSU moved for summary judgment as to Plaintiff's punitive damages claim pursuant to 42 U.S.C. § 1981a(b)(1). Absent a viable state law claim, Defendant's argument has merit, and Plaintiff did not respond. Thus, summary judgment is appropriate under Rule 56(e) of the Federal Rules of Civil Procedure.

**IV.**    **Conclusion**

As stated, Plaintiff conceded her negligence claims against both defendants, and those claims are therefore dismissed. Having fully considered the parties' submissions, the Court grant's Defendant JSU's motion for summary judgment with respect to punitive damages and intentional infliction of emotional distress/outrage. The Court denies JSU's motion with respect to Plaintiff's sexual harassment claim and takes the retaliation claim under advisement. Defendant Dean's motion for summary judgment is granted with respect to Title VII, § 1981, and the state law claims, but it is otherwise denied. Finally, in light of the Court's ruling on punitive

damages, Plaintiff's Motion to Strike [37] can be dismissed as moot.

**SO ORDERED AND ADJUDGED** this the 7th day of March, 2008.

>s/ *Daniel P. Jordan III*
>UNITED STATES DISTRICT JUDGE